OPINION OF THE COURT
Jeffrey K. Oing, J.
*513 In this 10-year-old medical malpractice action, plaintiffs allege that in January 1995 defendant performed facet rhizotomy and posterior denervation surgeries on plaintiff Donna Connolly’s spine. Plaintiffs contend that defendant’s “surgical technique was improper and overly invasive and that Dr. Lampert erred by cutting and damaging the nerves” and that as a result plaintiff “developed a devastating pain syndrome known as Reflex Sympathetic Dystrophy.” Trial of this action is scheduled to commence on September 18, 2006.
Flomenhaft & Cannata, LLP, counsel for plaintiffs, Donna Connolly and George Connolly, move by order to show cause to quash defendants’ judicial subpoena duces tecum served upon them which seeks to have counsel appear at trial to provide testimony and to produce certain documentation related to plaintiff Donna Connolly’s personal injury action.
Plaintiffs move by order to show cause for an order precluding defendant, Michael Lampert, and his experts from proffering certain scientific evidence at trial on the ground that it is not generally accepted in the relevant scientific community. In the alternative, plaintiffs seek to have this court conduct a Frye hearing (Frye v United States, 293 F 1013 [DC Cir 1923]).
Defendants cross-move for an order compelling plaintiffs’ counsel to pay in advance of trial the one-day witness fee for defendants’ examining expert physicians given that plaintiffs subpoenaed them to testify at trial on plaintiffs’ case-in-chief. Further, defendants seek an order limiting plaintiffs’ examination to nonleading questions and precluding them from impeaching these witnesses. In the alternative, defendants cross-move for an order quashing the subpoenas. Defendants also cross-move for an order precluding plaintiffs’ expert neuroscientist and Dr. Carol Kaufman from testifying at trial.
This court heard oral arguments on these motions and cross motion on August 3, 2006, and made rulings with respect to these applications, all of which were set forth on the record.
Plaintiffs’ counsel’s motion to quash the subpoena served upon the law firm is granted, and the subpoena is quashed. In that regard, defendant shall be permitted to testify at trial with respect to his conversations he had with counsel concerning plaintiff Donna Connolly’s personal injury action (see, Connolly v Lampert, Sup Ct, NY County, Mar. 2, 1998, Sklar, J., Index No. 114552/96).
Defendants’ cross motion for an order compelling plaintiffs to compensate their experts for testifying on plaintiffs’ case-in- *514 chief is denied. Plaintiffs shall pay these individuals the statutory fee for a subpoenaed witness. In the event plaintiffs elicit testimony that encroaches on these witnesses’ expert opinion, rather than factual underpinnings, then plaintiffs shall be required to compensate these witnesses at their customary witness fee. That branch of the cross motion seeking an order concerning trial examination of these witnesses is granted to the extent that examination shall be limited to nonleading questions. In that regard, plaintiffs’ counsel’s argument that these witnesses must be treated as hostile witnesses and that there must be an opportunity to impeach them is premature. Plaintiffs’ counsel may renew his application for such relief at trial. That branch of the cross motion to preclude Dr. Carol Kaufman from testifying is denied. With regard to the branch seeking to preclude plaintiffs’ neuroscientist, it is denied without prejudice to renew pending plaintiffs’ submission of proof of medical degree, with the name of the individual redacted. That branch of the cross motion to quash certain subpoenas served upon defendants’ counsel is granted unless plaintiffs’ counsel produces all nonprivileged correspondence between counsel and his physicians.
This court now turns to plaintiffs’ motion to preclude defendant physician and his experts from proffering certain scientific evidence at trial on the ground that it is not generally accepted in the relevant scientific community. In the alternative, plaintiffs contend a Frye hearing must be held.
For the reasons stated on the record and that follow, this court finds that a Frye hearing is not warranted and the motion is denied.
The principle is well settled that the proponent of scientific evidence must establish that the theory and method used by a particular witness is generally accepted in the scientific community (Nonnon v City of New York, 32 AD3d 91, 92-93 [1st Dept 2006], citing Frye v United States, 293 F 1013 [DC Cir 1923]). Thus, under the rule articulated in Frye, and embraced by New York courts, the proponent of “novel science” must establish its general acceptance among scientists within the relevant discipline to justify its admission (32 AD3d at 102).
As Justice Saxe cogently stated in a concurring opinion:
“The important purpose of the Frye test is to ensure that courts do not rely upon an expert’s testimony regarding a novel procedure, methodology or theory *515 unless it has been ‘generally accepted’ within the relevant scientific community as leading to reliable results . . . The focus of the Frye test is to distinguish between scientific principles which are ‘demonstrable’ and those which are ‘experimental’ ” (Marsh v Smyth, 12 AD3d 307, 310 [1st Dept 2004, Saxe, J., concurring] [citations omitted]).
Further, Justice Saxe noted that
“[t]he Frye test, used in a classic context, considers whether the court should allow testimony involving a recently introduced process such as DNA testing . . . , polygraph tests . . . , or posthypnotic recollection . . . , by asking whether the reliability of the test or process is ‘generally accepted’ by those in a position to know. The test has also been applied equally well where scientists and social scientists have proposed the application of newly posited theories, such as rape trauma syndrome . . . , neonaticide syndrome . . . , or multiple chemical sensitivity syndrome.” (Id. at 310-311.)
In these contexts, in order to find evidence of the newly minted process or newly posited theory admissible, use of the Frye test to determine “general acceptance” helps courts avoid reliance on psychological theories or experimental processes which may actually be widely rejected as baseless, unreliable or insufficiently established. (Id.)
Within these parameters, and for the reasons that follow, a Frye hearing is unwarranted. Here, plaintiffs seek to preclude defendant physician and his experts from proffering evidence concerning facet rhizotomy and posterior denervation, procedures performed by defendant in treating plaintiff. Plaintiffs argue that the procedures are novel and are not generally accepted in the relevant scientific community (see, affidavit of H. Roy Silvers, M.D., moving papers, exhibit A). As such, defendants should be precluded from proffering evidence of these procedures. Of course, defendants counter that the procedures are neither novel nor unscientific (see, affidavit of Matthew T. Kline, M.D., opposition papers, exhibit J). Not surprisingly, each expert forcefully asserts positions diametrically opposed to the other, relying on scientific literature to support their claims (moving papers, exhibit D; opposition papers, exhibit K). This situation in itself engenders a weighing of the evidence, which is clearly outside of the realm of this court’s function in performing a Frye analysis (see, People v Wesley, 83 NY2d 417, 422-426 [1994]).
*516 Nevertheless, were this court to accept plaintiffs’ argument and preclude defendant physician and his experts from testifying on the challenged procedures, that preclusion would be tantamount to denying defendants an opportunity to interpose a meaningful defense to plaintiffs’ case-in-chief that such performed procedures were a departure from medical standards in treating plaintiff. Such a result could not have been contemplated by Frye and its progeny. Indeed, Frye and its progeny cannot be given an overly expansive reading that would preclude a defendant treating physician from testifying at trial as to the medical procedures he or she performed on the plaintiff patient which is the basis of the medical malpractice lawsuit. Under these circumstances, a Frye analysis is inapplicable.
In any event, on the issue of whether a Frye hearing should be conducted, for the reasons that follow, such a pretrial hearing would be unwarranted. Within the factual context of this case, Justice Saxe’s analysis is most persuasive and compelling:
“[W]here the proposed expert testimony concerns a claim that the plaintiffs injury was caused by the actions taken by the defendants, the whole concept of the Frye analysis is of limited applicability. Plaintiff’s experts were not relying on a newly minted procedure or test, or a newly posited behavioral syndrome; they were simply offering their informed opinion that the way in which defendants handled plaintiffs body while she was unconscious resulted in injury to that part of her body. Expert testimony as to whether the asserted conduct of the defendants was the causative agent for the plaintiffs injury does not really involve anything novel or experimental as contemplated by the Frye test. Rather, it is exactly that which is often the primary point of contention in a personal injury action, where the plaintiff offers an opinion that the defendant’s conduct caused the injury, and the defendant denies any such conduct and counters that the injury resulted from some other causative agent, unrelated to defendant. Such expert testimony simply does not warrant a preliminary Frye-type hearing; these types of competing claims are adequately dealt with at trial. Indeed, it is arguable that to hold a pretrial hearing in this type of context is simply to give the *517 defense an extra opportunity to cross-examine the plaintiffs experts and to pinpoint perceived weaknesses.” (Marsh v Smyth at 311-312.)
Accordingly, under these circumstances, plaintiffs’ attempt to preclude defendants and their experts from introducing as their defense evidence concerning facet rhizotomy and posterior denervation procedures finds no justification insofar as the procedures themselves are the conduct complained of and form the basis of plaintiffs’ medical malpractice action against defendants.